UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JKL IP Company, LLC**, a Michigan limited
liability company; and
**The Caden Companies d/b/a Belly Bandit**, a
California corporation,

                                           Case No.
                                           Hon.

        Plaintiffs,

v.

**Creative Forces Group, Inc., d/b/a Tummy Aid,**
a California corporation; **Pixior, LLC**, a
California limited liability company; **Xochitl Medina**,
an individual; **Alina Havandjian,** an individual,
**Yassine Amallal,** an individual, and **Jim Martinson**, an individual,

        Defendants.

_____/

JOELSON ROSENBERG, PLC
By: Peter W. Joelson (P51468)
Emily R. Warren (P76675)
Attorneys for Plaintiffs
30665 Northwestern Hwy, Suite 200
Farmington Hills, Michigan 48334
(248) 855-2233; (248) 855-2388 (fax)
pwj@jrlawplc.com
ewarren@jrlawplc.com

_____/

## **PLAINTIFFS' COMPLAINT**

      NOW COME Plaintiffs JKL IP Company, LLC, and The Caden Companies,

d/b/a Belly Bandit, by and through their attorneys, and for their Complaint state as

follows:

## NATURE OF THE CASE

This case arises out of the wrongful actions taken by the Defendants, together and individually, to violate the express terms of the parties' contracts and to engage in unfair competition and pass off Plaintiffs' products, intellectual property, good will, and reputation.

Defendant Pixior, LLC controlled the fulfillment center where Plaintiffs' goods were stored; as a result, Pixior and its principal, Defendant Yassine Amallal, were privy to confidential and proprietary information about Plaintiffs' goods and business.  Defendants Pixior, LLC and Yassine Amallal colluded and conspired with Defendants Jim Martinson and a competing company, Defendant Tummy Aid (and its principals Xochitl Medina and Alina Havandjian) to steal Plaintiffs' proprietary information and trade secrets and use that information to make a competing, knock-off product.  Defendants Pixior and Amallal went so far as to wrongfully withhold Plaintiffs' products at their warehouse and refuse to ship Plaintiffs' products in an effort to allow Defendants Tummy Aid (and Medina and Havandjian) to ship their knock-off products to Plaintiffs' customers.  As a result, Plaintiffs have incurred hundreds of thousands of dollars in monetary damages and immeasurable damages to their reputation and customer good will.

## THE PARTIES

1.     Plaintiff JKL IP Company, LLC, ("JKL IP Company") is a Michigan limited liability company with its principal place of business located at 1020 S. Old Woodward Ave., Birmingham, Oakland County, Michigan 48009.

2.     Plaintiff The Caden Companies, d/b/a Belly Bandit ("Belly Bandit") is a California corporation with its principal place of business located at 13412 Ventura Blvd., Suite 300, Sherman Oaks, California 91423.

3.     Belly Bandit is in the business of designing, marketing, selling, and distributing clothing items, namely maternity wear and shapewear items for use before, during, and after pregnancy.

4.     JKL IP Company owns the intellectual property used by Belly Bandit, such as trademarks and patents.

5.     Belly Bandit and JKL IP Company conduct business throughout the United States and internationally, including in Michigan.

6.     Defendant Creative Forces Group, Inc., d/b/a Tummy Aid ("Tummy Aid"), is a California corporation with its registered office at 2816 Pacific Ave., Venice, California 90291.

7.     On information and belief, Tummy Aid operates out of a location at 2601 Sequoia Drive, South Gate, California 90281. (See Tummy Aid Catalog/Sales Brochure, Exhibit A).

3

8.     Defendant Pixior, LLC ("Pixior") is a California limited liability company with its registered office at 5901 S. Eastern Ave., Commerce, California 90040.

9.     Defendant Xochitl Medina ("Medina") is an individual who, on information and belief, conducts business throughout the United States, including in Michigan, through her entity, Defendant Tummy Aid.

10.     Medina's business address is 2816 Pacific Ave., Venice, California 90291.

11.     Defendant Yassine Amallal is a member/principal of Defendant Pixior, LLC, and on information and belief, conducts business throughout the United States, including in Michigan.

12.     Defendant Jim Martinson ("Martinson") is an individual who, on information and belief, conducts business throughout the United States, including in Michigan.

13.     Martinson's address is 13202 Olympic Blvd., #210, Los Angeles, California 90021.

14.     Tummy Aid appears to be engaged in the business of marketing, selling, and distributing maternity and shapewear clothing that infringes on or is confusingly similar to Plaintiff Belly Bandit's products.   (See Exhibit A, Tummy Aid Catalog/Sales Brochure; Exhibit B, Belly Bandit Catalog)

4

15.     Pixior is engaged in the business of warehousing, shipping, and distributing retail products for other companies, including Plaintiff Belly Bandit (see Exhibit C, Belly Bandit/Pixior Service Agreement), and on information and belief, Defendant Tummy Aid.

16.     Medina is a principal member or shareholder and employee of Tummy Aid and is authorized by Tummy Aid to act on its behalf.  (See Exhibit A).

17.     Alina Havandjian is an individual whose business address is 2816 Pacific Ave., Venice, California 90291.

18.     On information and belief, Havandjian is a member or shareholder and employee of Tummy Aid and is authorized by Tummy Aid to act on its behalf.

19.     Martinson is party to the Global and Worldwide Non-Disclosure, Non-Circumvention, and Non-Competition Agreement ("Global Agreement," Exhibit D) with Plaintiff Belly Bandit.

## JURISDICTION AND VENUE

20.     Pursuant to 28 USC § 1331, this Court has federal question jurisdiction over Plaintiffs' claims for Patent Infringement (Count IV) brought under 35 USC § 271.

21.     Pursuant to 28 USC § 1367, this Court has jurisdiction over Plaintiffs' other claims as those claims are so related to the Patent Infringement claim (Count IV) that they form part of the same case or controversy.

5

22.     On information and belief, Tummy Aid has recently conducted business in Michigan by engaging with a Michigan-based business, Ruby's Balm, located at 6917 Orchard Lake Road, West Bloomfield, Oakland County, Michigan 48322.

23.     On information and belief, Tummy Aid solicited business from Ruby's Balm and shipped several of its products to Ruby's Balm at the address listed in paragraph 22.

24.     Defendants Medina and Havandjian conduct business in Michigan through Tummy Aid.

25.     On information and belief, Pixior and Pixior Global served as the warehouse that shipped these products to Ruby's Balm in Michigan.

26.     Pixior and Pixior Global provided warehouse and shipping services to Belly Bandit in the past, and shipped many products to Michigan on many occasions.

27.     Pixior and Pixior Global conduct business in Michigan and have availed themselves of the laws and benefits of the State of Michigan.

28.     Jim Martinson is party to a contract with Belly Bandit in which he agrees and consents to jurisdiction in Michigan (See Global Agreement, Exhibit D).

29.     Venue is in all other respects appropriate in this Court.

## GENERAL ALLEGATIONS

30.     Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

### PLAINTIFF'S "BELLY BANDIT" PRODUCTS

31.     Belly Bandit designs, sells, markets, and distributes women's clothing, namely maternity wear and shapewear designed for use before, during, and after pregnancy.

32.     "Belly Bandit" is the name of one of Plaintiffs' best-selling products.

33.     The Belly Bandit is a compression belt designed for wear after pregnancy to help heal the core and abdominal muscles after giving birth.  (See Exhibit B, Belly Bandit Catalog).

34.     The Belly Bandit comes in various materials and patterns, including:

- The Original Belly Bandit, below (see also Exhibit B);

 

- The Bamboo Belly Bandit, below (see also Exhibit B);



- The Couture Belly Bandit, below (see also Exhibit B).



- The BFF Belly Bandit, below (see also Exhibit B).

 

8

35.    The BFF Belly Bandit is a patented design protected by Patent Registration No.  (Exhibit E, Patent Registration).

36.    One of Belly Bandit's other best-selling products is the "Mother Tucker Leggings," shown below.



**"BELLY BANDIT" MARKETING**

37.    Belly Bandit uses advertisements and promotional materials on its website, partner websites, trade shows, publications, print and online catalogs, and social media (such as Facebook, Instagram, and Twitter).

38.    Belly Bandit has hired and retained models to wear and display the products.

39.    Belly Bandit has conducted extensive market research in creating its advertisements, selecting its models, designing its products, designing its packaging, and designing photographs for its website and catalogs.

40.    Belly Bandit deliberately designed its website and used photographs using certain carefully selected poses to display its products.

    

**BELLY BANDIT**                    **TUMMY AID**

41.    A crucial component of Belly Bandit marketing involves proving that the products work as intended.

42.    Belly Bandit uses "before and after" photographs from its actual customers in its advertising and promotion to demonstrate that the Belly Bandit products work as advertised.

43.    Belly Bandit solicits images from its customers for use in its advertising materials, such as testimonials and "Bandita of the Month."

44.    Belly Bandit also receives images from its customers without solicitation for use in its advertising materials.

10

45.    Belly Bandit's customers trust and allow Belly Bandit to use their images because of the efficacy of the Belly Bandit products and the unique relationship Belly Bandit actively cultivates and maintains with its customers.

46.    Belly Bandit has access to images of its customers using the Belly Bandit products because of Belly Bandit's consumer good will and reputation.

### SIZING AND PACKAGE TEXT

47.    Belly Bandit's President, Jodi Caden, created the Belly Bandit sizes and sizing chart.  The measurements are not based on any standard sizing or industry protocol and are solely the creation of Belly Bandit.  Belly Bandit's size chart and copy from Belly Bandit packaging appear below:

**Belly Bandit Sizing**

| Band Sizes | Fits Belly Size |
|---|---|
| XS | 28" - 32" = 71cm - 81cm |
| SM | 33" - 37" = 84cm - 94cm |
| MED | 38" - 43" = 97cm - 110cm |
| LG | 44" - 49" = 112cm -124cm |
| XL | 50" - 57" = 127cm - 144 |

If you are purchasing a Belly Bandit early on in your pregnancy, your best bet is to go up 1 to 2 band sizes from your pre-pregnancy belly size.
In the eighth month many women will be the same size as they will be post delivery. Simply measure the part of your tummy that is the biggest all the way around your abdomen, which is usually at the belly button, and choose the corresponding band for your size. Just prior to delivery simply subtract 3 to 5 inches from your belly measurement. Select the corresponding band for that size. If you purchase your Belly Bandit after you give birth, simply choose the corresponding band for belly size. The Belly Bandit is designed with five inches of adjustability to stay tight as you shrink.

11

48.     Tummy Aid copied Belly Bandit's sizing and size chart verbatim, as well as the sizing instructions:

**SIZING**

| Band Sizes | Fits Tummy Waist Size |
|---|---|
| XS | 28" - 32" = 71cm - 81cm |
| SM | 33" - 37" = 84cm - 94cm |
| MED | 38" - 43" = 97cm - 110cm |
| LG | 44" - 49" = 112cm -124cm |
| XL | 50" - 57" = 127cm -144cm |

*Do not use during pregnancy

| PREGNANCY Months | SIZE Recommendations |
|---|---|
| 0 | 2 bands sizes from your pre-pregnancy waist size |
| 1-7 | 1 to 2 bands sizes from your pre-pregnancy waist size |
| 8 | Choose a waist size band that fits |
| 9 | Subtract 3 "-5" inches from your current waist size |

*Measure the circumference of your waistline at your belly button

## "BELLY BANDIT" RETAIL AND DISTRIBUTION

49.     Belly Bandit began distributing and selling its products throughout the United States in 2008.

50.     When Belly Bandit first began selling its products, the products were sold in a few small retail shops.

51.     Belly Bandit is currently featured in boutique maternity and children's stores throughout the United States, as well as well-known, national retailers such as Nordstrom, Buy Buy Baby, A Pea in the Pod, Baby's 'R' Us, and Target.

12

52.     Belly Bandit has spent years cultivating its retailer relationships, locating buyers for department stores, and setting price points for specific retail partners.

53.     Belly Bandit contracts with warehouses and distribution companies to store and ship their products to retailers, local distribution centers, and to individual consumers.

## BELLY BANDIT'S CONTRACT WITH PIXIOR

54.     Belly Bandit and Pixior were parties to a contract ("Service Agreement" Exhibit C) signed on or about July 10, 2015.

55.     The Warehousing and Distribution Agreement contains a clear and enforceable non-competition/non-solicitation and confidentiality provisions (Exhibit C, ¶ 9).

56.     As a result of their contractual relationship, Pixior has had access to Belly Bandit's proprietary and confidential information and trade secrets.

57.     Such proprietary and confidential information includes the identity of Belly Bandit's customers, retailers, suppliers, and distributors.

58.     Pixior had access to Belly Bandit's computers.  Specifically, Pixior (and its employees and owners, including Defendant Yassine Amallal) had a license that allowed them to retrieve order information from the computer system, and also

13

allowed them to see all other information that was stored on the Belly Bandit computer system.

59.    Such proprietary and confidential information includes Belly Bandit's retail and wholesale pricing, as well as customer lists, names, addresses, and contact information that was not publicly available.

60.    The proprietary and confidential information obtained by Pixior could only have been obtained through its contractual relationship with Belly Bandit and such information is not accessible to the public or readily available through other sources.

## BELLY BANDIT'S CONTRACT WITH JIM MARTINSON

61.    On or about November 11, 2014, Belly Bandit and Defendant Jim Martinson entered into the Global and Worldwide Non-Disclosure, Non-Circumvention, and Non-Competition Agreement ("Global Agreement," Exhibit D).

62.    The Global Agreement identifies Jim Martinson as the "Confidant," meaning the recipient of Belly Bandit's confidential information and trade secrets.

63.    Martinson signed the Global Agreement, thereby agreeing to all of its terms.

64.    Martinson obtained Belly Bandit's confidential and proprietary information and trade secrets solely through his business relationship with Belly Bandit.

14

65.   Martinson did not perform any work according to the terms of the contract.

66.   Under the guise of obtaining information to be used in connection with his potential work for Belly Bandit, Martinson learned the identity of Belly Bandit's customers, retailers, suppliers, and distributors.

67.   Through his contractual relationship with Belly Bandit, Martinson learned Belly Bandit's retail and wholesale pricing.

68.   Through his contractual relationship with Belly Bandit, Martinson learned about the designs of Belly Bandit products, specifically the parts and materials used in each product that would not be evident from simply purchasing or viewing the product.

69.   The proprietary and confidential information obtained by Martinson could only have been obtained through its contractual relationship with Belly Bandit and such information is not accessible to the public or readily available through other sources.

70.   The Global Agreement prohibits Martinson from disclosing any of Belly Bandit's confidential information.  (Exhibit D, ¶ 3).

71.   The Global Agreement prohibits Martinson from using any of Belly Bandit's confidential information to gain a financial or business advantage for himself or any other person or entity.  (Exhibit D, ¶ 4-5).

72.     Martinson was given samples of each Belly Bandit product.  When Belly Bandit demanded that Martinson return the samples, Martinson refused.  On information and belief, Martinson remains in possession of Belly Bandit's samples.

### "TUMMY AID" PRODUCTS

73.     As early as August of 2015, Belly Bandit discovered that another company calling itself "Tummy Aid" was attempting to sell products confusingly similar to Belly Bandit products.

74.     On information and belief, Tummy Aid, through its agent or representative, contacted one of Belly Bandit's major retail distributors and offered to sell Tummy Aid products.

75.     "Tummy Aid" products consist of the following:

- "Original Slimming Belly Band";



- "LUX Bamboo Belly Band";



- "Haute Couture Belly Band";

 

- "Corset Band"



- Tummy Aid's Leggings:



76.    Tummy Aid products are offered for sale at www.thetummyaid.com.

77.     Tummy Aid products are, on information and belief, offered for sale at retail stores.

78.     On information and belief, Tummy Aid listed Ruby's Balm in West Bloomfield, Michigan as a retailer on its website.

## TUMMY AID MISAPPROPRIATES AND INFRINGES UPON BELLY BANDIT'S INTELLECTUAL PROPERTY

79.     The "Tummy Aid" products are identical to Belly Bandit products in design.

80.     The "Tummy Aid" products are nearly identical and confusingly similar to Belly Bandit products in name and description.  (See Exhibits A and B).

81.     Tummy Aid uses photograph poses that are identical to Belly Bandit's website, bellybandit.com, and the Belly Bandit catalog.  (Exhibit B).

82.     On information and belief, Tummy Aid has contacted the buyers for certain retailers who carry Belly Bandit products.

83.     The identities and contact information of the buyers is not readily accessible by the public or available through other means.

84.     Tummy Aid and its principals, through the conspiracy with Pixior, Yassine Amallal, and Jim Martinson, discovered the identities of Belly Bandit's customers by having Pixior and/or Amallal access Belly Bandit's computer system.

85.     Tummy Aid misappropriated images of Belly Bandit's customers and attempted to pass off the image as a "before-and-after" photograph of a Tummy Aid customer.

86.     The article below endorses the Belly Bandit and was posted over four years ago.  The "before-and-after" images in the article were originally sent to Belly Bandit via email on February 2, 2010. (Full article, Exhibit F).



20

87.    On June 22, 2015, Tummy Aid used the same photos to falsely represent that the Tummy Aid products accomplished the results shown in the photos.



88.    Sia Cooper is the founder of the blog www.fitmommydiaries.com and is a Belly Bandit Ambassador.  Sia frequently shares her "before-and-after" photos with Belly Bandit for use with Belly Bandit's advertising.

89.    Ms. Cooper endorsed Belly Bandit on her website using the photograph below (entire blog post attached as Exhibit G).

Friday, April 11, 2014

## Why You Should Use a Postpartum Girdle After Delivery



With all of my postpartum girdle reviews going on, I've gotten frequent amounts of questions revolving around them so I thought I would clear them up!

What does a postpartum girdle do?
A postpartum girdle compresses the tummy and uterus in order to help shrink it back to its original size-sometimes even smaller! Some are also made to shrink your hips as well. For C-section mamas, they help hold the incision in well due to the fact that some incisions tend to come apart. They also give you the support you need when using your abdominal muscles postpartum when you are still weak.

90.     Ms. Cooper specifically endorsed Belly Bandit in the blog post (Exhibit G) by stating:

**What brand girdle do I recommend?**
My favorite is Belly Bandit. I used this girdle for two weeks post pregnancy and my abs were as flat as can be! Click here to view their girdles.

91.     Belly Bandit, with Ms. Cooper's permission, used her photos in a facebook post in 2014:



22

92.    Tummy Aid misappropriated Ms. Cooper's photos and used them in a

Facebook post implying that Ms. Cooper endorsed Tummy Aid.



93.    Tummy Aid's products are nearly identical to Belly Bandit's.

94.    The Couture Belly Bandit comes in similar pattern and color options as

the Tummy Aid "Haute Couture Belly Band."



**BELLY BANDIT COUTURE PATTERNS**

 

**TUMMY AID "HAUTE COUTURE BELLY BAND" PATTERNS**

95.     The Original Belly Bandit and Tummy Aid's "Original Belly Band" are   nearly   identical   and   come   in   nude   and   black   colors.

 

**ORIGINAL BELLY BANDIT**              **TUMMY AID "ORIGINAL BELLY BAND"**

96.     The products themselves are nearly identical, as well as the packaging, text copy on the packaging for instructions, warnings, and disclaimers, size chart and sizing instructions, and nearly every other element of the products.

24

97.    Tummy Aid's packaging shown below (right side) is nearly identical and confusingly similar to Belly Bandit's.





25

98.    The instructions included with the Belly Bandit Packaging are as follows:

**HOW TO WEAR YOUR BELLY BANDIT:**
If your Belly Bandit® is 1-2.5 inches shy of closing, wait a day or two, and try again – it will fit!.  We do not recommend an exchange as it will likely result in receiving a Belly Bandit® that is too large or only fit for a week or two.  We advise lying down on your bed with your Belly Bandit under you to fasten the Velcro, this allows for a better grip.  If your Belly Bandit® is 3 or more inches shy of closing a larger size may be needed.

**WRINKLES AND CRINKLES ARE NORMAL**
When you see creases in your Belly Bandit®, rest assured that means it's working!  Much like a bandage, Belly Bandit®  forms to the bend of your body to maximize compression and ensure comfort & flexibility. A snug fit creates the necessary compression to see results and the band will crease as you move.

99.    Tummy Aid's "copy" text on its packaging is identical to Belly Bandit's:

**HOW TO WEAR YOUR TUMMY AID BAND**
If your tummy band is 1-2.5 inches short of closing right after delivery wait a day or two. It will most likely fit, if you try again.  We do not recommend an exchange as it will likely result in receiving a band that will be too large.  Instead try lying down on your bed with your tummy aid band under you to get a better grip to close.  If your tummy aid band is 3 or more inches short of closing you may need a larger size.

**WRINKLES AND CRINKLES ARE NORMAL**
When you see creases in your tummy aid band, that means it's working.
Much like a bandage, tummy aid band forms to the bend of your body to maximize compression and ensure comfort & flexibility. A tight fit creates the necessary compression to see results and the band will crease as you move.

100.    Each Belly Bandit package has a small card with wear and care instructions enclosed.

101.    The enclosures, include written instructions and a series of three images designed to assist customers with fitting and wearing their Belly Bandit products.

26





# BELLY BANDIT®







With the Velcro® ends in each hand, center the band on your back, with the label side facing towards you.

Wrap the band with the 5" Velcro® facing away from your belly.

Secure band snugly by placing the 2" Velcro® side over the top of the larger Velcro® portion.

102.   Tummy Aid's packaging includes an enclosure with identical

instructions and the same series of images.



103.   The image below shows that Tummy Aid copied Belly Bandit's card

insert almost exactly, other than the hairstyle in the image.



104.   Tummy Aid's packaging is identical to Belly Bandit's sizing chart and sizing instructions.

105.   Tummy Aid wrongfully copied Belly Bandit's shipping, returns, and exchange policy (Exhibit H, Shipping and Return Policy Comparison).

106.   Belly Bandit's Legal Disclaimer that appears on all Belly Bandit packaging appears below:



107.   Tummy Aid wrongfully copied Belly Bandit's legal disclaimer:



108.   Tummy Aid misappropriated, wrongfully copied, or stole nearly every aspect of Belly Bandit's product name, design, packaging, marketing, e-commerce policies, and materials.

109.   In its "Frequently Asked Questions" page on its website, Tummy Aid copied Belly Bandit's website (which is protected by a copyright registration No. TX0007478062) and failed to remove the word "Belly Bandit" from the Tummy Aid website (see below and Exhibit I).



110.   Each and every named Defendant, in addition to other individuals who are not known to Plaintiffs at this time, participated in misappropriating, wrongfully copying, wrongfully reproducing, and/or stealing Belly Bandit's intellectual property, confidential and proprietary information, and trade secrets.

## COUNT I – TRADE DRESS INFRINGEMENT
### (TUMMY AID, MEDINA, AND HAVANDJIAN)

111.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

112.   Defendants Tummy Aid and Medina have infringed upon Belly Bandit's trade dress as defined by 15 USC § 1125(a)(1).

113.   Belly Bandit's trade dress, including the appearance and design of the Belly Bandit products, exterior packaging, color scheme, and product description, have distinctive patterns, colors, sizing, style sizing and pattern of product.

114.   Belly Bandit owns its packaging, including product description and photographs, as trade dress.

115.   Belly Bandit's trade dress is non-functional.

116.   Defendants Tummy Aid and Medina used Belly Bandit's trade dress as described herein and depicted in the attached exhibits without Belly Bandit's consent in a manner that is likely to cause confusion among ordinary and even sophisticated consumers as to the source, sponsorship, affiliation, or approval of Belly Bandit for Tummy Aid's goods.

117.   Belly Bandit's "Original Belly Bandit" packaging is protected by copyright registration No. VA0001834562.

118.   Belly Bandit's "Bamboo Belly Bandit" packaging is protected by copyright registration No. VA0001834560.

119.   Belly Bandit's "Couture Belly Bandit" packaging is protected by copyright registration No. VA0001834563.

120.   Tummy Aid's unauthorized and tortious conduct has also deprived and will continue to deprive Belly Bandit of the ability to control the consumer perception of its products and services, placing the valuable reputation and goodwill of Belly Bandit in the hands of Tummy Aid.

## COUNT II – PATENT INFRINGEMENT
## (TUMMY AID, MEDINA, AND HAVANDJIAN)

121.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

122.   Defendants Tummy Aid and Medina have infringed upon Belly Bandit's patent for the BFF Belly Bandit (Exhibit E) and continues to infringe, directly and indirectly through contributory and/or induced infringement one or more claims of Belly Bandit's patent by using, selling, and/or offering to sell in the United States one or more of Belly Bandit's products, specifically the Tummy Aid "Corset Belly Band" which is identical to Belly Bandit's BFF Belly Bandit and is protected by Belly Bandit's patent registration.

123.   Tummy Aid's "Corset Belly Band" appears below on the right next to Belly Bandit's BFF Belly Bandit.

 

**BFF BELLY BANDIT**          **TUMMY AID'S "CORSET BELLY BAND"**

124.   Tummy Aid's infringing activities violate 35 U.S.C. § 271. 32.

125.   An ordinary observer familiar with Belly Bandit's patent would be deceived into believing that Tummy Aid's "Corset Belly Band" is the same as Belly Bandit's patented design.

126.   Belly Bandit is informed and believes, and on that basis alleges, that Tummy Aid's infringement of Belly Bandit's patent has been and continues to be intentional, willful, and without regard to Belly Bandit's rights.

127.   Belly Bandit is informed and believes, and on that basis alleges, that Tummy Aid's infringement of Belly Bandit's patent is and has been intentional, deliberate, and willful at least because it had knowledge of the patent as a result of its participation in the maternity-wear industry and through its direct and indirect communications with Martinson and/or Pixior.

33

128.   Belly Bandit is informed and believes, and on that basis alleges, that Tummy Aid has gained profits by virtue of its infringement of Belly Bandit's patent.

129.   Belly Bandit has sustained damages as a direct and proximate result of Tummy Aid's infringement of Belly Bandits patent.

130.   Belly Bandit will suffer and is suffering irreparable harm from Tummy Aid's infringement of Belly Bandit's patent.

131.   Belly Bandit has no adequate remedy at law and is entitled to an injunction against Tummy Aid's continuing infringement of Belly Bandit's patent.

132.   Unless enjoined, Tummy Aid will continue its infringing conduct.

## COUNT III – PASSING OFF
### (TUMMY AID, MEDINA, AND HAVANDJIAN)

133.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

134.   Defendants Tummy Aid and Medina have made material misrepresentations regarding the origin, affiliation, and/or approval by Belly Bandit of Tummy Aid's products.

135.   These material misrepresentations were made in the course of trade, specifically on Tummy Aid's website, blog, and on social media controlled by Tummy Aid.

136.   Tummy Aid's misrepresentations include use of images of individuals (Belly Bandit customers) to suggest an endorsement or a connection between Belly Bandit and Tummy Aid where no such connection exists.

137.   These material misrepresentations are made to both prospective customers and to ultimate consumers of Belly Bandit's and Tummy Aid's products.

138.   Tummy Aid's misrepresentations are designed to mislead consumers and to injure the business and good will of Belly Bandit.

139.   Tummy Aid's misrepresentations have and will continue to cause Belly Bandit irreparable harm to its good will and reputation, as well as monetary damages.

## COUNT IV- BREACH OF CONTRACT
### (JIM MARTINSON)

140.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

141.   Belly Bandit and Martinson are parties to a valid, enforceable, and binding contract (Global Agreement, Exhibit D).

142.   Martinson breached nearly every provision of the Global Agreement by disclosing Belly Bandit's confidential information and/or using said confidential information for his own financial gain.

143.   On information and belief, Martinson disclosed the identity of Belly Bandit's manufacturers and suppliers to the other Defendants for the purpose of

wrongfully copying and reproducing "knock-off" versions of the Belly Bandit Products under the name "Tummy Aid."

144.   Martinson was privy to the location and identity of Belly Bandit's manufacturer and suppliers, samples, bands, etc.

145.   For instance, Martinson, through his contractual relationship with Belly Bandit, knew the identity of Belly Bandit's elastic supplier and knew which type of elastic material Belly Bandit uses in its products.

146.   Martinson used this information to assist Tummy Aid with using the same supplier and materials to make its Tummy Aid products.

147.   Martinson was expressly prohibited from disclosing, using, or misappropriating any of Belly Bandit's confidential or proprietary information.

148.   As a direct and proximate result of Martinson's breaches, defaults, and defalcations, Belly Bandit has suffered monetary damages, as well as irreparable damage to its customer good will, brand, and reputation.

## COUNT V – BREACH OF CONTRACT
### (PIXIOR AND AMALLAL)

149.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

150.   Belly Bandit and Pixior are parties to a valid, enforceable, and binding contract (Service Agreement, Exhibit C).

151.   Pixior breached the confidentiality and non-competition provisions of the Service Agreement by disclosing Belly Bandit's confidential information and/or using said confidential information for its own financial gain.

152.   Pixior knew the identities of Belly Bandit's suppliers, retailers, customers, and retail buyers and used that information for its own financial gain.

153.   Pixior knew Belly Bandit's shipment schedule, fulfillment schedule, and other proprietary information regarding how and where Belly Bandit ships its products to customers, retailers, and wholesalers.

154.   In December of 2015, Pixior attempted to unilaterally change the terms of the agreement with Belly Bandit by increasing prices and adding charges for services that had not been charged for previously.

155.   Pixior was in possession and control of hundreds of thousands of dollars of Belly Bandit's goods, and attempted to use this superior bargaining position to force Belly Bandit to agree to the new contract terms.

156.   The new contract terms proposed by Pixior were unacceptable, and Belly Bandit rejected the new contract.

157.   Pixior's unilateral attempt at changing the parties' agreement constituted a breach of the existing contract and Belly Bandit was forced to terminate the service contract.

158.   Belly Bandit notified Pixior of its intent to terminate the agreement on or about January 6, 2016.

159.   In retaliation and in an effort to assist Tummy Aid with unfairly competing with Belly Bandit, Pixior wrongfully withheld Belly Bandit's shipments and refused to release Belly Bandit's products from the warehouse.

160.   On January 13, 2016, Pixior purportedly placed a "warehouse lien" on Belly Bandit's goods and demanded payment of $42,309.40 to release the lien. (Exhibit J, Email from Pixior, January 13, 2016).

161.   During this time, Pixior improperly stored Belly Bandit's goods in the warehouse parking lot and used Belly Bandit's boxes and shipping materials to ship other companies' products, including Tummy Aid, on information and belief.

162.   Belly Bandit did not owe Pixior $42,309.40, however, because Belly Bandit's business was at a standstill as long as the products were being held hostage by Pixior, Belly Bandit paid the full amount demanded.

163.   After Belly Bandit wired $42,309.40 under duress, Pixior still refused to release Belly Bandit's goods.

164.   Pixior falsified additional charges to Belly Bandit and demanded yet another payment of $9,815.00.

165.   Defendant Amallal is a member/principal of Pixior.

166.   Defendant Amallal wrongfully and fraudulently falsified charges and demanded additional payment from Belly Bandit.

167.   Defendant Amallal used Pixior as a mere instrumentality to commit fraud and other wrongful acts against Belly Bandit and to extort additional payments from Belly Bandit.

168.   Belly Bandit made (costly) arrangements to send trucks to the warehouse to retrieve its goods, but Pixior refused to permit the goods to be removed from the warehouse until it had successfully extorted an addition $9,815.00 from Belly Bandit.

169.   Belly Bandit simply could not go another day with its goods being held hostage by Pixior, and was again forced to pay the amount demanded.

170.   Pixior wrongfully withheld Belly Bandit' products and refused to ship Belly Bandit products intentionally for the purpose of damaging Belly Bandit's business, reputation, and status in the marketplace.

171.   On information and belief, while Pixior was holding Belly Bandit's products hostage and preventing Belly Bandit from fulfilling customer orders, Tummy Aid contacted Belly Bandit's customers and offered to sell them Tummy Aid products.

2:16-cv-11941-MAG-EAS   Doc # 1   Filed 05/27/16   Pg 40 of 44   Pg ID 40

172.   In an effort to mitigate its damages, Belly Bandit paid Pixior nearly $40,000.00 over and above the amount it rightfully owed Pixior pursuant to the parties' contract.

173.   Despite its diligent effort to mitigate its damages, Belly Bandit lost at least $250,000.00 sales solely due to Pixior's and Amallal's failure and refusal to release Belly Bandit's goods from the warehouse in a timely fashion.

174.   As a direct and proximate result of Pixior's breaches, defaults, and defalcations, Belly Bandit has suffered monetary damages, as well as irreparable damage to its customer good will, brand, and reputation.

## COUNT VI – UNFAIR COMPETITION
### (ALL DEFENDANTS)

175.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

176.   Defendants deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass their products and services off as those of Belly Bandit.

177.   Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Belly Bandit of the ability to control the consumer perception of its products, placing the valuable reputation and goodwill of Belly Bandit in the hands of Defendants.

178.   Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants' infringing products and Belly Bandit's products, and as to the origin, sponsorship, and approval of said products.

179.   As a result of Defendants' aforesaid conduct, Belly Bandit has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Belly Bandit in its products, patents, and trade dress.

180.   This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Belly Bandit has no adequate remedy at law.

181.   Belly Bandit will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT VII – CIVIL CONSPIRACY
### (ALL DEFENDANTS)

182.   Plaintiffs incorporate all of the foregoing allegations as if fully stated herein.

183.   Defendants have engaged together in a concerted action to misappropriate Belly Bandit's trade secrets and confidential and proprietary information for their own financial gain.

41

184.   Defendants Martinson and Pixior learned confidential and proprietary information about Belly Bandit, its products, and its retailers, suppliers, and distributors, by virtue of their contracts with Belly Bandit.

185.   Defendants Martinson and Pixior, on information and belief, colluded with Tummy Aid and Medina to manufacture Tummy Aid products and attempt to distribute those products wrongfully using Belly Bandit's business contacts, packaging, price points, and advertising images, marketing material, photography, copy, and styles.

186.   Defendants colluded together to engage in unfair competition, trade dress infringement, and/or patent infringement of Belly Bandit's products and business.

187.   Defendants colluded together to cause damage to Belly Bandit's reputation and goodwill, and relationship with its customers by refusing to release Belly Bandit's products and causing Belly Bandit to be unable to fill customer orders.

188.   As a direct and proximate result of Defendants' tortious conduct, Belly Bandit has suffered monetary damages and non-monetary damages.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs requests a jury trial of all issues that may be tried to a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an Order and Judgment as follows:

A.    Entry of an order (on a preliminary and permanent basis) requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

    (i)    Using or displaying Belly Bandit's images or that of its customers on any websites, products, or promotional materials in any false and/or deceptive manner;

    (ii)    Using or displaying any images or materials similar to those use by Belly Bandit;

    (ii)    Doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers of Belly Bandit's products as to the source of the products offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Defendants and Belly Bandit;

    (iii)    Making any representations, express or implied, that Belly Bandit is affiliated with or sponsors or approves of Defendants or their products or services.

B.    Ordering Defendants to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction relating to or arising from the use of Belly Bandit's trade dress, images, or patented product, or otherwise in furtherance of the scheme alleged herein;

C.    Directing Defendants to provide an accounting of profits made by Defendants as a result of Defendants' unlawful conduct;

D.    Ordering Defendants to pay a judgment in the amount of Plaintiffs' actual damages, as well as Defendants' profits, and pre- and post-judgment interest pursuant, in an amount to be proven at trial;

E.    Order Defendants to disgorge any profits made from Tummy Aid products and pay to said profits to Plaintiffs;

F.    Ordering Defendants to pay Plaintiffs' reasonable attorneys fees and costs of this action;

G.    Granting Plaintiffs such other and further relief as is consistent with equity and good conscience.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, by and through counsel, hereby demand a trial by jury of all claims.

Respectfully submitted,

JOELSON ROSENBERG, PLC

/s/Emily R. Warren_____
By: Peter W. Joelson (P51468)
Emily R. Warren (P76675)
Attorneys for Plaintiffs
30665 Northwestern Hwy, Suite 200
Farmington Hills, Michigan 48334
(248) 855-2233; (248) 855-2388 (fax)
pwj@jrlawplc.com
ewarren@jrlawplc.com